**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:

PROTECTIVE PRODUCTS OF AMERICA,
INC., et al.,[1]

        Debtor.
_____/

CANADIAN IMPERIAL BANK OF
COMMERCE,

        Plaintiff,

v.

PROTECTIVE PRODUCTS OF AMERICA,
INC, CPC HOLDING CORPORATION OF
AMERICA, CERAMIC PROTECTION
CORPORATION OF AMERICA,
PROTECTIVE PRODUCTS
INTERNATIONAL CORP., PROTECTIVE
PRODUCTS OF NORTH CAROLINA,
LLC and JOINT COMMITTEE OF
CREDITORS HOLDING UNSECURED
CLAIMS,

        Defendants.
_____/

CASE NO.: 10-10711-BKC-JKO

Chapter 11 Cases
(Jointly Administered)

Adversary No.:

**COMPLAINT FOR DECLARATORY RELIEF ESTABLISHING VALIDITY,
PRIORITY AND EXTENT OF PRE AND POST-PETITION SECURED CLAIMS AND
JUDGMENT DIRECTING PAYMENT THEREOF**

    Plaintiff Canadian Imperial Bank of Commerce ("CIBC"), by undersigned counsel,

hereby sues the above captioned debtors and the Joint Committee of Creditors Holding

---

[1] The name and the last four digits of the taxpayer identification number for each of the Debtors follows in parenthesis:  (i)  Protective Products of America, Inc. (9709); CPC Holding Corporation of America (8086); (iii) Ceramic Protection Corporation of America (7305); (iv)  Protective Products International Corp. (7373); and Protective Products of North Carolina, LLC (0927).  The current address for the Debtors is: c/o Ahearn Jasco & Company, P.A., Attn: Frank E. Jaumot, CPA, 190 Southeast 19th Avenue, Pompano Beach, Florida 33060.

Unsecured Claims appointed in these cases (a) to establish the validity, priority and extent of CIBC's pre and post-petition secured claims, liens and security interests and (b) for judgment directing payment thereof, and alleges as follows:

## NATURE OF ACTION

1.     This proceeding is commenced by CIBC (a) for declaratory relief against all Defendants establishing the validity, priority and extent of CIBC's pre and post-petition secured claims, liens and security interests against the Debtors (as defined below) and (b) to compel payment of CIBC's secured claims from the proceeds realized from the sale of CIBC's collateral.

## PARTIES

2.     Plaintiff CIBC is a Canadian chartered bank with its head office located in Toronto, Ontario Canada.

3.     Defendant Protective Products of America, Inc. ("PPA") is a corporation organized under the laws of the State of Delaware with offices in Broward County, Florida.

4.     Defendant CPC Holding Corporation of America ("CPC Holding") is a corporation organized under the laws of the State of Delaware with offices in Broward County, Florida.

5.     Defendant Ceramic Protection Corporation of America ("CPCA") is a corporation organized under the laws of the State of Delaware with offices in Broward County, Florida.

6.      Defendant Protective Products International Corp. ("PPI") is a corporation organized under the laws of the State of Florida with offices in Broward County, Florida.

7.     Defendant Protective Products of North Carolina, LLC ("PPNC") is a limited liability company organized under the laws of the State of North Carolina with offices in Broward County, Florida.

8.      Defendant Joint Committee of Creditors Holding Unsecured Claims (the "Committee") is the official committee of creditors appointed in these cases by the Office of the United States Trustee pursuant to Section 1102 of the Bankruptcy Code.

## JURISDICTION AND VENUE

9.      On January 13, 2010 (the "Petition Date"), PPA, CPC Holding, CPCA, PPI and PPNC (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and their cases are being jointly administered and are pending before the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, Chapter 11 Case No. 10-10711-JKO.

10.      This adversary proceeding is commenced pursuant to sections 364, 502, 503, 506 and 507 of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

11.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157.  This proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2). CIBC consents to the entry of final orders or judgment by the Bankruptcy Court with respect to the subject matter of this proceeding only.

12.      Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND
### CIBC's Pre-petition Loans

13.      PPA[2] was formed in 1995 in Alberta, Canada and completed its U.S. domestication process as a  Delaware corporation on or about July 31, 2008.

14.      CPC Holding is a direct subsidiary of PPA.

_____

[2] The term PPA includes all of its predecessor companies.

3

15.     CPCA, PPI and PPNC are each direct subsidiaries of CPC Holding and indirect subsidiaries of PPA. CPC Holding, CPCA, PPI and PPNC are hereinafter referred to as the "Material Subsidiaries."

16.     On or about September 21, 2004, PPA entered into a credit agreement with CIBC, as amended from time to time, whereby CIBC agreed to provide PPA with certain financial accommodations (the "Loans") collateralized by substantially all assets of PPA and guaranteed by its material subsidiaries and secured by substantially all assets of those material subsidiaries (the "2004 Credit Agreement").

17.      Over the next several years, PPA and CIBC amended the 2004 Credit Agreement to provide, among other things, for the waiver of certain financial covenant breaches and extensions of the maturity dates for repayment of the Loans.

18.     Notwithstanding the financial accommodations, waivers and extensions provided to PPA by CIBC, PPA failed to repay its obligations under the 2004 Credit Agreement when they became due in October 2008.

19.      Despite PPA's payment default, as a further accommodation to PPA, effective as of January 30, 2009, CIBC and PPA entered into (a) a Forbearance Agreement (the "Forbearance Agreement") and (b) an Amended and Restated Credit Agreement (the "Restated Credit Agreement"). The Credit Agreement, Forbearance Agreement and the Restated Credit Agreement, as same may have been amended from time to time (including as described below), together with the other documents and instruments executed by the Debtors in connection therewith are referred to collectively as the ("Pre-petition Loan Documents").

20.     Pursuant to the Forbearance Agreement, the Debtors acknowledged, among other facts, (a) the validity and enforceability of (i) all security interests granted to CIBC to secure

such indebtedness and (ii) the guarantees delivered by the Material Subsidiaries and (b) the existence of various defaults under the Credit Agreement.

21.     Pursuant to a Security Agreement dated February 11, 2009 (the "Security Agreement"), the Debtors continued CIBC's pre-existing lien (the "Pre-petition Lien") upon substantially all of the Debtors' property in the United States including, without limitation, all accounts, inventory, equipment and general intangibles, together with the proceeds thereof (the "Pre-petition Collateral") to secure payment of the Debtors' obligations under the Pre-petition Loan Documents.  A copy of the Security Agreement is attached hereto as Exhibit A.[3]

22.     CIBC's lien upon the Pre-petition Collateral in the United States was perfected by appropriate filings under the Uniform Commercial Code ("UCC").  Copies of the UCC filings, along with a summarizing schedule, are  attached hereto as Exhibit B.

23.     Pursuant to a First Amending Agreement to the Forbearance Agreement, effective as of June 30, 2009 (the "First Amending Agreement"), CIBC advanced an additional $650,000 to PPA and agreed, subject to the Debtors' compliance with certain conditions, to forbear from exercising its remedies until October 31, 2009.

24.     Pursuant to a Second Amending Agreement to the Forbearance Agreement, effective as of December 24, 2009 (the "Second Amending Agreement"), CIBC advanced an additional $700,000 to PPA and agreed, subject to the Debtors' compliance with certain conditions, to forbear from exercising its remedies until January 8, 2010.

---

[3] Copies of all Pre-petition Loan Documents are not attached as exhibits because they are voluminous or superseded by virtue of subsequent agreements such as the Restated Credit Agreement.  Copies of documents evidencing CIBC's secured claims were provided previously to counsel for the Committee and, on information and belief, are also in the possession of the Debtors.

25.     As part of the Second Amending Agreement, the Debtors acknowledged that (prior to the additional advance of $700,000), the indebtedness under the Loans consisted of $6,579,056, together with any accrued and unpaid interest thereon, plus all fees, service charges, legal fees and expenses and other costs.

## Use of Cash Collateral and DIP Financing

26.     On January 13, 2009, the Debtors filed voluntary petitions with the Bankruptcy Court for relief under chapter 11 of the Bankruptcy Code.

27.      Pursuant to one of their "first day" motions [C.P. 18], the Debtors requested, among other relief, authorization to (a) obtain secured super-priority financing from CIBC under section 364 of the Bankruptcy Code in an aggregate amount up to $740,000 under a Superpriority Priming Debtor-In-Possession Credit Agreement, dated January 13, 2010 (the "DIP Credit Agreement") and (b) use CIBC's cash collateral pursuant to section 363 of the Bankruptcy Code and provide adequate protection for such use.

28.     The DIP Credit Agreement and the use of CIBC's cash collateral were approved on an interim basis pursuant to an Order of the Bankruptcy Court (the "Interim DIP Finance Order") [C.P. 72].

29.     Pursuant to a subsequent Order of the Court [C.P. 120], the Debtor was authorized to enter into a letter agreement amending the DIP Credit Agreement (the "Amendment").

30.     The Interim DIP Finance Order included the Debtors' stipulations, *inter alia*, that (a) on January 13, 2010, the Debtors were jointly and severally indebted to CIBC in the principal amount of $7,602,759.96, together with all accrued and unpaid interest thereon, plus all fees, service charges, legal fees and expenses, costs and other amounts and (b) the liens granted by the Debtors to secure such obligations were valid, perfected and enforceable.

31.     The Interim DIP Finance Order granted CIBC, *inter alia*, an allowed super-priority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code to the extent of any diminution in the value of the Pre-petition Collateral (the "Pre-petition Super-priority Claim").

32.     As adequate protection for the Debtors' use of cash collateral and compensation for any diminution in the value of the Pre-petition Collateral, the Interim DIP Finance Order granted CIBC, *inter alia*, a replacement lien and security interest upon all assets subject to the Pre-petition Lien, and the proceeds, products and profits thereof (the "Pre-petition Replacement Lien").

33.     Pursuant to the Interim DIP Finance Order, the Debtors used CIBC's cash collateral in the course of their post-petition operations.

34.     To secure the Debtors' 'Obligations' as defined in the DIP Credit Agreement (the "Post-petition Obligations"), pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, the Interim DIP Finance Order granted CIBC, *inter alia*, valid, perfected, enforceable and non-avoidable liens (the "Post-petition Lien") on substantially all of the Debtors' assets (the "Post-petition Collateral").

35.     Pursuant to the Interim DIP Finance Order, the Post-petition Obligations were also granted status as allowed super-priority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code (the "Post-petition Super-priority Claim").

36.     The Debtors have incurred Post-petition Obligations under the DIP Credit Agreement including, without limitation, a loan commitment fee in the amount of $37,000 and legal fees and expenses incurred by CIBC in connection with the DIP Credit Agreement, the Amendment and the APA, as hereinafter defined (the "Post-petition Indebtedness").

37.     The Post-petition Indebtedness is secured by the Post-petition Lien upon the Post-petition Collateral (the "Secured Post-petition Claim").

**Auction and Sale of Assets**

38.     On the Petition Date, the Debtors also filed a motion requesting, among other relief, approval of the sale of substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code and approval of the procedures relating thereto (the "Sale Motion") [C.P. 19].

39.     The bidding procedures and other aspects of the Sale Motion were approved by Order of the Court filed on January 19, 2010 [C.P. 46].  The Debtors thereafter conducted an auction for the sale of substantially all of their assets (the "Sale").

40.     Following competitive bidding at the auction, the Debtors agreed to sell substantially all of their assets  including the right to receive tax refunds (the "Tax Refunds") to Protective Products Enterprises, Inc. (the "Purchaser") pursuant to a Second Amended and Restated Asset Purchase Agreement, dated February 19, 2010 (the "APA").

41.     Pursuant to the APA, Purchaser agreed to, *inter alia*, (a) pay the Debtors cash in the amount of $10.7 million, and (b) share a portion of the proceeds realized from the Tax Refunds with the Debtors.

42.     The Sale to Purchaser pursuant to the APA was approved by Order of the Court filed on February 22, 2010 (the "Sale Order") [C.P. 133].

43.     The Sale Order required the Debtor to escrow $9 million from the proceeds of the Sale in a segregated interest bearing account (the "Escrow Account") as to which CIBC's pre and post-petition liens would attach with the same validity and priority as its liens upon the assets sold to Purchaser (the "Acquired Assets").

44.     If the funds in the Escrow Account are insufficient to pay CIBC's claims in full, the Sale Order also granted CIBC a lien upon all assets of the Debtors with the same validity and priority as CIBC's liens on such assets.

45.     On or about March 5, 2010 (the "Sale Closing"), the Debtors consummated the sale of the Acquired Assets to Purchaser and $9 million was deposited into the Escrow Account out of the cash portion of the purchase price.

46.     As of the date of the Sale Closing, the value of the inventory and accounts receivable, subject to the Pre-petition Lien, Pre-petition Replacement Lien and Post-petition Lien, that were sold to the Purchaser exceeded $7.5 million.

47.     As of the date of the Sale Closing, the value of the Acquired Assets (other than inventory and accounts receivable) subject to the Pre-petition Lien, Pre-petition Replacement Lien and Post-petition Lien, exceeded $3 million.

**Challenge Period**

48.     The Interim DIP Finance Order provided for a 75 day period after the date of its entry (the "Challenge Deadline") for the Committee to challenge the validity, priority, extent or enforceability of the Pre-petition Liens or any pre or post-petition payment made to CIBC (a "Challenge").

49.     The Interim Order further provided that if a timely Challenge was not filed it would be deemed irrevocably waived and abandoned.

50.     The Sale Order provided that the funds in the Escrow Account would be released to CIBC in payment of its claims if a timely Challenge was not filed.

51.    The Committee has advised CIBC that (a) the Committee has grounds to file a Challenge and (b) the Committee has negotiated a stipulation with the Debtors granting  the Committee standing to assert a Challenge.

52.    At the request of the Committee, the Court extended the Challenge Period to May 28, 2010.

53.    There is a real and actual controversy between the Committee, which seeks to stand in the shoes of the Debtors, and CIBC concerning the validity, priority and extent of CIBC's pre and post-petition claims and liens.

54.    CIBC is therefore commencing this action to determine the validity, priority and extent of its pre and post-petition claims and liens.

**FIRST CAUSE OF ACTION**
**(Declaration of Validity, Priority and Extent of Pre-petition Secured Claim)**

55.    CIBC realleges paragraphs 1 through 54.

56.    On the Petition Date, pursuant to the Pre-petition Loan Documents, each of the Debtors was jointly and severally indebted to CIBC in the principal amount of $7,602,759.96, together with all accrued and unpaid interest thereon, plus all fees, service charges, legal fees (including, without limitation, accrued and unpaid legal fees) and expenses and other amounts (the "Pre-petition Indebtedness").

57.    The Pre-petition Indebtedness arises from financial accommodations and other consideration extended in good faith, and at arm's length, by CIBC as a third party lender to the Debtors.

58.    On the Petition Date, the Pre-petition Indebtedness was a valid and enforceable pre-petition claim against the Debtors that was not subject to avoidance, recharacterization, disallowance or subordination.

10

59.     On the Petition Date, the Pre-petition Indebtedness was secured by the Pre-petition Lien upon the Pre-petition Collateral.

60.     On the Petition Date, the Pre-petition Lien was a valid, enforceable, first priority lien upon the Pre-petition Collateral, and was not subject to avoidance, recharacterization, disallowance or subordination.

61.     On the Petition Date, the value of the Pre-petition Collateral was substantially higher than the amount of the Pre-petition Indebtedness.

62.     Pursuant to the Pre-petition Loan Documents and section 506(b) of the Bankruptcy Code, the amount of the Pre-petition Indebtedness has increased, and continues to increase, as a result of (a) the accrual of additional interest on Loans at the default rate, and (b) CIBC's reasonable fees, costs and charges including, without limitation, attorneys' fees and expenses (collectively, the "Post-petition Interest and Expenses"), which together with the Pre-petition Indebtedness constitutes CIBC's "Secured Pre-petition Claim."

63.     Pursuant to the Sale Order, the Secured Pre-petition Claim has attached to the Escrow Account.

WHEREFORE, CIBC requests entry of judgment on its First Cause of Action (a) declaring that the Secured Pre-petition Claim is a valid, perfected and enforceable secured claim against the Debtors secured by the Pre-petition Collateral, the Pre-petition Replacement Lien and the Escrow Account, which is subject only to the Secured Post-petition Claim, (b) allowing and determining the amount of the Secured Pre-petition Claim, and (c) granting such other and further relief as may be necessary or appropriate.

## SECOND CAUSE OF ACTION
### (Declaration of Extent of Super-priority Administrative
### Expense Claim – Diminution of Pre-petition Collateral)

64.     CIBC realleges paragraphs 1 through 63.

65.     Pursuant to the Interim DIP Finance Order and section 507(b) of the Bankruptcy
Code, CIBC is entitled to an allowed super-priority claim to the extent of any diminution in the
value of the Pre-petition Collateral resulting from the Debtors' use of CIBC's cash collateral or
the automatic stay of the enforcement of CIBC's rights under the Pre-petition Loan Documents.

WHEREFORE, CIBC requests entry of judgment on its Second Cause of Action (a)
determining the extent of any diminution in the value of the Pre-petition Collateral resulting from
the Debtors' use of CIBC's cash collateral or the automatic stay of the enforcement of CIBC's
rights under the Pre-petition Loan Documents, (b) allowing CIBC a super-priority administrative
expense claim pursuant to section 507(b) of the Bankruptcy Code in an amount equal to such
diminution in value and (c) granting such other and further relief as may be necessary or
appropriate.

## THIRD CAUSE OF ACTION
### (Declaration of Validity, Priority and Extent of Post-petition Secured Claim)

66.     CIBC realleges paragraphs 1 through 65.

67.     The Secured Post-petition Claim arises from financial accommodations and other
consideration extended in good faith, and at arm's length, by CIBC as a third party lender to the
Debtors, as debtors-in-possession.

68.     The Secured Post-petition Claim is a valid and enforceable post-petition claim
against the Debtors that is not subject to avoidance, recharacterization, disallowance or
subordination.

69.     The Secured Post-petition Claim is secured by the Post-petition Lien upon the Post-petition Collateral.

70.     The Post-petition Lien is a valid, enforceable, first priority lien upon the Post-petition Collateral, and is not subject to avoidance, recharacterization, disallowance or subordination.

71.     The value of the Post-petition Collateral is substantially higher than the amount of the Secured Post-petition Claim.

72.     Pursuant to the Sale Order, the Secured Post-petition Claim has attached to the Escrow Account.

WHEREFORE, CIBC requests entry of judgment on its Third Cause of Action (a) declaring that the Secured Post-petition Claim is a valid, perfected and enforceable first priority secured claim against the Debtors secured by the Post-petition Collateral and the Escrow Account, (b) allowing and determining the amount of the Secured Post-petition Claim and (c) granting such other and further relief as may be necessary or appropriate

### FOURTH CAUSE OF ACTION
### (Declaration of Extent of Super-priority Administrative
### Expense Claim – Post-petition Super-priority Claim)

73.     CIBC realleges paragraphs 1 through 72.

74.     Pursuant to the Interim DIP Finance Order and section 364(c)(1) of the Bankruptcy Code, CIBC is entitled to an allowed super-priority claim in the amount of the Post-petition Indebtedness.

WHEREFORE, CIBC requests entry of judgment on its Fourth Cause of Action (a) allowing CIBC a super-priority administrative expense claim pursuant to section 364(c)(1) of the

Bankruptcy Code in an amount equal to the Post-petition Indebtedness and (b) granting such other and further relief as may be necessary or appropriate.

**FIFTH CAUSE OF ACTION**
**(Payment of CIBC's Claims)**

75.    CIBC realleges paragraphs 1 through 74.

76.    No basis for a Challenge exists.

77.    Pursuant to the Sale Order, CIBC is entitled to be paid the full amount of its Secured Pre-petition Claim and the Secured Post-petition Claim from the funds held in the Escrow Account.

78.    Pursuant to the Sale Order, if the amount of funds in the Escrow Account is insufficient to pay the Secured Pre-petition Claim and the Secured Post-petition Claim in full, such claims are entitled to be paid from the other assets of the Debtors subject to the Pre-petition Lien, the Pre-petition Replacement Lien and the Post-petition Lien.

WHEREFORE, CIBC requests entry of judgment on its Fifth Cause of Action (a) directing payment of the Secured Pre-petition Claim and Secured Post-petition Claim from the funds in the Escrow Account and, if such funds are insufficient, from other funds of the Debtors subject to the Pre-petition Lien, the Pre-petition Replacement Lien and the Post-petition Lien and (b) granting such other and further relief as may be necessary or appropriate.

Dated: April 8, 2010

**I HEREBY CERTIFY** that the undersigned attorney is appearing *pro hac vice* in this matter pursuant to Court Order dated January 27, 2010.

Respectfully submitted,

**SHUTTS & BOWEN LLP**

/s/ *Larry I. Glick*
Larry I. Glick
Florida Bar No. 75064
1500 Miami Center
201 South Biscayne Boulevard
Miami, FL  33131
*lglick@shutts.com*
Telephone:  305-358-6300
Facsimile:  305-347-7831
*Attorneys for Canadian Imperial Bank of Commerce*

MIADOCS 4185043 2

15